UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KAMMERON DAVIS, ) | Case No. 4:20-cr-00775-SRC-1 |
| ) | |
| Defendant. ) | |
| ) | |

**Memorandum and Order**

In the days leading up to trial, Plaintiff United States and Defendant Kammeron Davis filed competing motions in limine disputing the enforcement of a proffer agreement both parties previously signed. At stake is the admissibility of incriminating statements Davis made pursuant to that agreement. Because Davis knowingly and voluntarily entered into the proffer agreement, the Court holds that it remains valid and enforceable. Accordingly, the Court grants the United States' fifth motion in limine and denies Davis's fifth motion in limine.

**I.  Background**

In December 2020, a grand jury returned an eight-count indictment against Kammeron Davis, charging him with four counts of attempting to obstruct, delay, or affect commerce by robbery of restaurants and four counts of knowingly possessing and brandishing a firearm in furtherance of a crime of violence (namely, interference with interstate commerce by robbery). Docs. 1, 2. Shortly thereafter, Assistant Federal Public Defender Tara Crane entered her appearance as counsel for Davis. Doc. 17.

During pretrial proceedings, on October 15, 2021, the United States emailed Crane a proposed proffer based on Davis's desire to "proffer information to the United States . . . with

respect to his knowledge of criminal activities." Doc. 149-1 at 1.  Neither party sought to file the agreement or their related briefing on it under seal.  *See* docs. 149, 151, 155–56; *see also* E.D. Mo. L.R. 13.05 (providing for sealing of documents related to cooperation).  The agreement reads in relevant part:

> You have indicated that your client[] Kammeron Davis wishes to proffer information to the United States of America with respect to his knowledge of criminal activities.  Specifically, your client is considering revealing personal knowledge of activities of himself and/or his associates.
>
> The United States is willing to meet with and listen to your client in order to determine if this information is of interest.  The undersigned parties have agreed to the terms of this proffer of information as follows:
>
> . . . .
>
> In return, the United States agrees that no statements given in the interview will be used directly against your client with the following exceptions:
>
> (a) . . .
>
> Furthermore, the United States may use any statements made or other information provided by you or your client to rebut evidence or arguments different from any statements made or other information provided by your client.  This provision is necessary to assure that no court or jury is misled by receiving information materially different from that provided by your client.
>
> (b) Additionally, the United States may cross-examine [Davis] concerning any statements made or other information provided during the interview and use the statements and information as substantive evidence to rebut any evidence offered or elicited or factual assertions made by or on behalf of your client at any stage of a criminal prosecution, including but not limited to pretrial hearings, trial and sentencing.
>
> . . . .
>
> This letter embodies the entirety of the agreement to make a proffer by your client.
>
> Please indicate your and your client's understanding and acceptance of these terms by executing the signature blocks below.

2

Doc. 149-1.  Immediately below that text is the signature of the Assistant United States Attorney, after which appears the following language:

> **ACCEPTED:**
>
> I, Kameron [sic] Davis, have read this letter . . . conferred with my attorney regarding the letter, and fully understand that there are no promises by the United States of America to enter into any agreement.

*Id.* at 3 (emphasis in original).  Just below those words are the signatures of both Davis and Crane.  *Id.*

Ten days later, Davis, joined by his counsel and the AUSA, sat for an interview with the FBI, yielding a proffer statement.  *See* doc. 149-2 at 1.  Now, years later and just before trial, the United States has filed a motion in limine that asks the Court to enforce the express terms of the proffer agreement, explaining that should Davis offer any statements, arguments, or evidence, including during opening statements, inconsistent with the contents of the proffer statement, the United States would seek to admit the statement.  Doc. 149 at 2.  Davis has filed a motion in limine of his own in which he concedes that he "may be cross-examined on his proffered statements" but argues that any other use of those statements would effectively rob him of his "rights to make a defense and to the effective assistance of counsel," rendering the agreement unenforceable outside the bounds of his own cross-examination.  Doc. 151 at 4–5.  Each party responded to the other's motion, leaving both motions ripe for the Court's review.

**II.    Standard**

"Statements made by a defendant in the course of plea negotiations, which may include proffer sessions, are usually inadmissible at trial."  *United States v. Bloate*, 534 F.3d 893, 901–02 (8th Cir. 2008), *rev'd on other grounds*, 559 U.S. 196 (2010) (first citing Fed. R. Evid. 410; and then citing *United States v. Velez*, 354 F.3d 190, 194 (2d Cir. 2004)).  "However, a defendant

3

may waive these protections, so long as there is no indication 'that the agreement was entered into unknowingly or involuntarily.'" *Id.* at 902 (quoting *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995)). To succeed on a showing that such a waiver "was entered into unknowingly or involuntarily," *id.* (quoting *Mezzanatto*, 513 U.S. at 210), one "must show more than that he misunderstood the extent of his waiver or its ramifications," *United States v. Sanders*, 341 F.3d 809, 817 (8th Cir. 2003) (citations omitted). Instead, he must raise "some affirmative indication," *Mezzanatto*, 513 U.S. at 210, that "his will was overborne," *Sanders*, 341 F.3d at 817 (citations omitted).

### III. Discussion

The type of proffer agreement at issue offers a defendant the opportunity to cooperate in his own prosecution, often hoping to gain leniency in a plea agreement. *See* doc. 149-1; *see Mezzanatto*, 513 U.S. at 209–10 ("we have repeatedly held that the government 'may encourage a guilty plea by offering substantial benefits in return for the plea.'" (quoting *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978))). In exchange, the United States agrees to limit its use of statements arising out of the agreement—except, as relevant here, to rebut contrary assertions, arguments, or evidence the defendant presents in his criminal proceedings, including at trial. Doc. 149-1 at 2. Here, Davis signed such an agreement to "indicate [his] . . . acceptance of [its] terms" after "confer[ing] with [his] attorney" on the subject. *Id.* at 3. The Eighth Circuit has repeatedly affirmed the validity of such agreements. *See, e.g.*, *Bloate*, 534 F.3d at 901–02 (affirming the district court's admission, pursuant to a proffer agreement, of statements the defendant made during a proffer session); *Sanders*, 341 F.3d at 817 (affirming the district court's use at sentencing, pursuant to a proffer agreement, of statements the defendant made during a proffer session); *United States v. Williams*, 295 F.3d 817, 820 (8th Cir. 2002) (affirming the

4

cross-examination of a defendant concerning his proffer statement). Accordingly, at least on its face, the Court has no reason to doubt the agreement's validity.

Davis, however, resists this conclusion, making numerous arguments that other than at his own cross-examination (assuming he chooses to testify), the Court should not permit the admission of his proffer statement at trial. Doc. 151 at 4–5; doc. 156 at 4–5. The Court finds none of his arguments persuasive.

First, Davis argues that to the extent the proffer agreement allows for the admission of the proffer statement outside of his own cross-examination, the agreement is unenforceable because "it infringes on [his] Sixth Amendment rights to counsel and to a defense." Doc. 151 at 4. That, he argues, is because given the incriminating nature of the statement, defense counsel would need to make every effort not to open the door to its admission—leaving him able to do no more at trial than "to sit tableside and argue to the jury [that the United States has failed to meet its] burden of proof." *Id.* at 5. Such a limitation, he protests, prevents him from making a meaningful defense, thereby violating his Sixth Amendment rights. *See id.* at 4–5. But mere limitations on what might constitute effective trial strategy—limitations imposed, incidentally, by Davis's own agreement and incriminating statements—do not constitute a constructive denial of the right to counsel. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984) (explaining that counsel's conduct constitutes a violation of the Sixth Amendment right to counsel only when it both falls "below an objective standard of reasonableness" and actually prejudices the defendant's case).

To be sure, at least one federal court has countenanced this argument. In *United States v. Duffy*, the court expressly split with the holdings of other circuit courts to find that a proffer agreement identical, in relevant part, to the agreement at issue in this case "implicate[d] [the

5

defendant]'s Sixth Amendment rights" by "prevent[ing] him from making any sort of meaningful defense."  133 F. Supp. 213, 215–16 (E.D.N.Y. 2001) (emphasis omitted) (disagreeing with the contrary holdings of *United States v. Krilich*, 159 F.3d 1020 (7th Cir. 1998), and *United States v. Burch*, 156 F.3d 1315 (D.C. Cir. 1998)).  But *Duffy* is not only out-of-circuit precedent in tension with binding Eighth Circuit decisions enforcing the terms of proffer agreements:  it is also bad law in its own jurisdiction.  Six years after that decision, the Second Circuit expressly "decline[d] to adopt the position advanced in *Duffy*[] and . . . note[d] with approval . . . [a] contrasting opinion" out of the Southern District of New York.  *United States v. Velez*, 354 F.3d 190, 195 (2d Cir. 2004) (referring to *United States v. Gomez*, 210 F. Supp. 2d 465 (S.D.N.Y. 2002)).  "[A] defendant who has consented to a waiver provision like the one at issue here has not forfeited his constitutional right to present a defense, to the effective assistance of his counsel, or to a fair trial."  *Id.* at 196.  This Court agrees:  Davis's waiver does not implicate those Sixth Amendment concerns.  He remains free to make claims at trial that are inconsistent with his proffer statements, with the natural consequence that under the terms of his own agreement with the United States, it may use his proffer statements to rebut those claims.  Accordingly, Davis's constitutional argument fails.

Second, Davis argues that he did not enter the agreement "knowingly" because he did not realize the effect it would have on his counsel's ability to mount an effective defense at trial.  Doc. 151 at 5.  He did not knowingly and voluntarily enter into the agreement, he claims, because he "failed to appreciate" that counsel would be unable to "confront[] . . . witnesses with a robust cross-examination" or "put on a meaningful defense during opening and closing arguments" for fear of opening the door to his incriminating proffer statement.  Doc. 156 at 4–5.  But the Eighth Circuit has addressed this argument before.  In *Sanders*, the defendant argued that

6

"he involuntarily and unknowingly agreed to the waiver" because the proffer agreement was "only generally explained" and "the AUSA led him to believe the waiver only applied to future prosecutions and not to his pending charges." 341 F.3d at 817.  The Eighth Circuit promptly rejected that claim, explaining that to succeed on a claim of involuntary and unknowing waiver, the defendant "must show more than that he misunderstood the extent of his waiver or its ramifications; he must show his will was overborne." *Id.* (citations omitted).

Although the *Sanders* dispute involved the use of proffer statements at sentencing (rather than at trial), *see id.*, its rule explaining when a waiver is unknowing or involuntary remains on point.  And that rule extinguishes Davis's claims of involuntary and unknowing waiver in this case.  Davis makes no argument that "his will was overborne," *id.*, nor does the record contain any evidence to that effect.  The record demonstrates the very opposite:  when he signed his proffer agreement, he did so after affirming that he had reviewed the document with counsel—in this case, a knowledgeable and experienced attorney from the Federal Public Defender's office with whom the Court is well familiar.  *See* doc. 149-1 at 3.  Accordingly, no reason exists for the Court to doubt that Davis knowingly and voluntarily entered into the proffer agreement.  *See also Mezzanatto*, 513 U.S. at 210–11 (finding waiver appropriate and noting that the defendant had "conferred with his lawyer after the prosecutor proposed waiver . . . and . . . never complained that he entered the waiver agreement at issue unknowingly or involuntarily").  The Court does note that if Davis has evidence he believes satisfies the Eighth Circuit's test for unknowing and involuntary waiver, he remains free to present such evidence to the Court.  But until he should do so, the Court finds that Davis knowingly and voluntarily entered into the agreement, and his arguments to the contrary fail.

Next, Davis argues that because the proffer agreement "does not contain the words 'cross examination,' 'opening argument,' 'closing argument' nor any other terms commonly associated with those portions of a trial," the agreement contains an ambiguity about whether the agreement applies to those phases of a trial, and the Court should resolve that ambiguity in his favor. Doc. 156 at 5.  But the language employed by the proffer agreement betrays no ambiguity at all.  It allows the United States to "use the statements and information as substantive evidence to rebut any evidence offered or elicited or factual assertions made by or on behalf of [Davis] at any stage of a criminal prosecution, including but not limited to pretrial hearings, trial and sentencing."  Doc. 149-1 at 2.  That language covers "any evidence offered or elicited" and "factual assertions," *id.* which encompasses cross examinations, opening statements, and closing arguments.  Likewise, the language covers, without qualification, "any stage of a criminal prosecution, including . . . trial," *id.*, which also encompasses the three phases of which Davis complains.  The language also specifies that the evidence or assertions may be "made by or on behalf of [Davis]," *id.*, thereby reaching both Davis and his counsel.  In short, the language admits of no qualification to its terms, and the Court declines to read an ambiguity into the text where none exists.

Finally, Davis cites *United States v. Andis*, 333 F.3d 886 (8th Cir. 2003), for the proposition that courts ought not enforce a waiver where to do so would result in a miscarriage of justice.  *See* doc. 156 at 5.  But that case does not support Davis's effort to void his proffer agreement.  There, the defendant accepted a guilty plea agreement by which he waived his appellate rights, *id.* at 889, and though the Eighth Circuit acknowledged the existence of a miscarriage-of-justice exception, it counseled that "waivers are contractual agreements between a defendant and the Government and should not be easily voided by the courts," *id.* at 891.

"This exception is a narrow one," it cautioned, holding that such an exception would apply in case of an "illegal sentence"—namely, one "not authorized by law." *Id.* at 892 (citation omitted). Here, Davis's proffer agreement is exactly the sort of "contractual agreement[] between a defendant and the Government" that "should not be easily voided." *Id.* at 891. Further, nothing in the proffer agreement is "illegal," nor is the participation of the parties in such an agreement "not authorized by law." *Id.* Accordingly, the Court declines to apply the "narrow" miscarriage-of-justice exception to Davis's waiver in this case.

### IV. Conclusion

Based on the present record, the Court finds that Davis knowingly and voluntarily entered into the proffer agreement, and nothing in the agreement violates his Sixth Amendment rights. Accordingly, the Court grants the United States' [149] Motion in Limine to Enforce Terms of the Proffer Agreement and denies Davis's [151] Motions in Limine to the extent they address the enforcement of the proffer agreement at trial. The Court enters this order sufficiently in advance of trial to allow Davis the opportunity to confer with counsel regarding how best to proceed in this case. If Davis can present evidence demonstrating that he did not knowingly and voluntarily enter into the proffer agreement, he remains free to do so before trial. Until he should present such evidence, however, the Court finds the proffer agreement enforceable and Davis's proffer statement admissible at trial pursuant to the terms of that agreement. Finally, the Court notes that it will address the parties' remaining motions in limine from the bench at the pretrial conference set for May 3, 2024.

So ordered this 3rd day of May 2024.

_SLR. CR_
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE