UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:20-cr-00775-SRC |
| KAMMERON DAVIS, | ) ) ) |
| Defendant. | ) ) |

**Memorandum and Order**

A jury convicted Defendant Kammeron Davis of seven counts involving three crimes: affecting commerce by robbery of restaurants engaged in interstate commerce, brandishing a firearm in furtherance of those robberies, and affecting commerce by attempted robbery of a restaurant engaged in interstate commerce. Now, he argues that numerous trial errors entitle him to a new trial. But his arguments fail to show any error transpired, much less one that would trigger a new trial. Accordingly, the Court denies Davis's motion for a new trial.

**I.   Background**

During pretrial proceedings in October 2021, Davis, represented by counsel, entered into a proffer agreement with the United States. *See* doc. 149-1. The agreement provided, in relevant part, that if Davis made a proffer statement to the FBI, the United States could use its contents to rebut any contradictory statements made, arguments made, or evidence presented "at any stage of a criminal prosecution." *Id*. at 2.

Shortly after, Davis, joined by his counsel and an Assistant United States Attorney, sat for an interview with the FBI, yielding a proffer statement in which Davis admitted to committing the crimes for which a grand jury indicted him in this case. *See* doc. 149-2.

"Davis committed a total of four robberies," the statement explains, "three of which were Subway restaurants and one a Penn Station restaurant. Davis used [a] 'banged up' blue Chevy Cruz[e] to commit the robberies. Davis was armed with a handgun in each robbery." Doc. 149-2 at 1.

In February 2023, during the pretrial-motions phase and after his second counsel withdrew to pursue a new career opportunity, doc. 94, the Court[1] appointed Davis new counsel, docs. 97–98, who would represent him through the conclusion of his trial. In May 2024, the case proceeded to trial, where the United States chose not to submit the proffer statement into evidence. A jury unanimously found Davis guilty of three counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a); one count of interference with commerce by attempted robbery, in violation of § 1951(a); and three counts of possessing and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1). *See* docs. 118, 174.

Those crimes occurred over an eight-day stretch in September 2020. First, Davis drove to a Penn Station restaurant in a worn Chevrolet Cruze, ordered a sandwich, drew his firearm on the store employee, dragged her towards a safe behind the counter, and forced her to give him its contents before he absconded with the cash. Three days later, he attempted the same ruse at a Subway restaurant, arriving in the same car and drawing his firearm, but an employee chased him out of the restaurant without surrendering anything of value. Minutes later, he arrived at a different Subway restaurant, again in the Cruze, this time succeeding in robbing the restaurant after brandishing his firearm. Four days later, he drove the same Cruze to yet another Subway, where he once more drew his firearm and robbed the restaurant. Based on video and audio

---

[1] Hon. Patricia L. Cohen, United States Magistrate Judge.

surveillance footage of each crime, numerous witnesses, including Davis's ex-girlfriend, identified Davis as the perpetrator, citing such factors as his gait, mannerisms, clothes, shoes, and voice.

Now, Davis seeks a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Doc. 177.   The United States filed its response to Davis's motion, doc. 178; Davis has declined to file a reply, and the time for doing so has passed.   Accordingly, Davis's motion for a new trial is ripe for the Court's review.

**II.     Standard**

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."   The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court."   *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict."   *Id.* (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)).   But "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand."   *Id.* (citing *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)); *see also United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012) ("Motions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." (quoting *United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006))).

With respect to allegations of trial error, the court should "balance the alleged errors against the record as a whole and evaluate the fairness of the trial" to determine whether a new trial is appropriate.   *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988).   The

3

granting of a new trial under Rule 33 "is a remedy to be used only 'sparingly and with caution.'" *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004) (quoting *Campos*, 306 F.3d at 579).

## III. Discussion

Davis argues that numerous trial errors entitle him to a new trial. First, he claims that the Court erred in denying his motions for judgment of acquittal at both the conclusion of the United States' case-in-chief and at the close of all evidence. Doc. 177 at 1–2. Second, he claims that the Court should grant him a new trial because "the verdict is against the weight of the evidence." *Id.* at 2. Third, Davis claims that the Court erred in denying his oral motion to dismiss the case following the United States' late disclosure of documents. *Id.* at 2–3. Fourth, he claims that the Court erred in admitting a Missouri Department of Revenue record into evidence. *Id.* at 3. Fifth, Davis argues that the Court erred in admitting Rule 404(b) evidence into the record. The Court addresses each of Davis's contentions in turn.

### A. Motions for judgment of acquittal

First, Davis argues that the Court erred in denying his motions for judgment of acquittal at the conclusion of the United States' case-in-chief and at the close of all evidence. Doc. 177 at 1–2. He makes no arguments to advance that claim, however, stating simply that "[e]ven with the evidence taken in the light most favorable to the government, the government failed to prove the elements of each count beyond a reasonable doubt such that no reasonable juror could have convicted [Davis]." *Id.* at 1. But Davis's opinion of the evidence cannot displace the jury's: the Court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006) (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)).

4

Here, when the Court denied Davis's motions for judgment of acquittal on the record, it explained that the United States had presented sufficient evidence to sustain the guilty verdict. It noted the video and testimonial evidence regarding the firearm(s) at issue. (The record is unclear on the irrelevant issue of whether Davis used the same or different firearms in each of the robberies.) The Court noted the substantial testimony regarding the effect of the robberies on interstate commerce, given the franchise fees that the St. Louis-area Subway and Penn Station stores pay to corporate headquarters in Connecticut and Kentucky, respectively. And it noted the credibility and extensive knowledge of the witnesses who identified Davis as the person committing each alleged offense in the video evidence the United States presented at trial. Accordingly, because Davis offers nothing new to substantiate his motions for judgment of acquittal, the Court denies Davis's motion for a new trial on this ground for the same reasons it denied his motions for judgment of acquittal on the record on the second day of trial.

### B. Sufficiency of the evidence

Next, Davis argues that notwithstanding the Court's rulings on his motions for judgment of acquittal, it should grant him a new trial because the verdict is against the weight of the evidence. Doc. 177 at 2. Specifically, he argues that the United States "submitted no evidence of a physical firearm, no evidence that what appears to be a firearm in the surveillance footage admitted into evidence was capable of firing, and no evidence from any expert in the area that could state that [Davis] possessed a firearm in the surveillance footage." *Id.* He also argues that "the government failed to establish that the alleged conduct had any effect on interstate commerce." *Id.*

The Court disagrees that Davis's arguments demonstrate his entitlement to a new trial. "A district court may grant a new trial for insufficiency of the evidence 'only if the evidence

5

weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Lacey*, 219 F.3d at 783 (quoting *United States v. Brown*, 956 F.2d 782, 786 (8th Cir. 1992)). When making this determination, the court may "weigh the evidence and evaluate for itself the credibility of the witnesses." *Id.* at 784 (citing *Brown*, 956 F.2d at 786). Here, the Court performed this weighing on the record when it addressed Davis's motions for acquittal, and in doing so, it specifically addressed Davis's arguments regarding the firearm and effects on interstate commerce.

Various witnesses identified the weapon used in the robberies and attempted robbery as a firearm. Other witnesses identified the defendant as regularly carrying a firearm. Further, and as multiple witnesses explained, the robbery of cash from each store affected interstate commerce by affecting the ability of the franchise owners to pay their franchise fees to out-of-state franchisors. Numerous witnesses identified Davis as the person in the video footage of each crime. Finally, the Court carefully observed each witness throughout their testimony, and though some appeared at times nervous or uncomfortable, the Court found their testimony credible given their knowledge of Davis, his appearance, and his voice.

Davis offers no new arguments to rebut those findings. In the light of the Court's weighing of the evidence, it finds that the evidence does not weigh against the verdict, much less so strongly that "a miscarriage of justice may have occurred." *Lacey*, 219 F.3d at 783 (quoting *Brown*, 956 F.2d at 786). Accordingly, the Court denies Davis's motion for a new trial on this ground.

### C. Late disclosure of documents

Next, Davis argues that the Court erred in denying his oral motion to dismiss in the light of the United States' late disclosure of a two-page FBI report of an interview of one of the

6

United States' witnesses, Laquita Williams.  Doc. 177 at 2–3.  But Davis provides no reason the Court should have granted the motion other than stating that the failure to timely disclose the report violated Davis's "due process rights[] and the right to confrontation."  *Id.* at 3.

The Court already addressed those arguments on the record at trial, explaining that because the failure to disclose evinced mere human error and inadvertence, no aggravating circumstances existed to warrant dismissal of the case.  Further, the Court ensured that Davis's counsel had sufficient time to review the short FBI report, then ordered the United States to re-produce Williams for further cross-examination regarding its contents.  Davis's counsel then took advantage of the opportunity to re-cross-examine Williams, specifically focusing on the contents of the FBI report.  Those measures sufficed to cure the United States' tardy disclosure, and Davis makes no arguments to the contrary, nor does he explain how he may have suffered any prejudice as a result of the violation.  Accordingly, because Davis offers nothing new to substantiate his motion, the Court denies his motion for a new trial on this ground for the same reasons it denied his motion for dismissal on the record on the second day of trial.

## D. Admission of the Missouri Department of Revenue record

Davis argues that the Court erred by denying his objection to the admission of Exhibit 49, a record of the Missouri Department of Revenue (DOR).  Doc. 177 at 3.  The two-page document reflects the registration of a license plate number—the same number on the plates recovered from the blue Chevrolet Cruze that Davis used in the commission of his crimes—to Karen Sutton, Davis's mother.  Davis complains that the document contains inadmissible hearsay under Federal Rule of Evidence 805, and does not satisfy the exception in Rule 803(14), which applies to records of documents affecting an interest in property.  *Id.*; *see* Fed. R. Evid.

7

803(14). Specifically, he argues that because the document does not bear a signature, it does not comply with Rule 803(14)(A), and must not be a trustworthy document. Doc. 177 at 3.

But Davis already made the same arguments on the record at trial, and as the Court explained when it overruled his objection to the admissibility of the evidence, the Missouri DOR record falls within the Rule 803(8) exception to hearsay. That rule explains the conditions under which a public record does not qualify as hearsay: "[when] (A) it sets out . . . the matter observed while under a legal duty to report . . . and . . . (B) the opponent [of the admissibility of the evidence] does not show that the source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). On the record at trial, the Court held that the DOR record satisfied this exception-to-hearsay rule because the DOR created the document pursuant to its duties, and Davis presented no evidence indicating the document's lack of trustworthiness. Further, although the rule does not require a signature as proof of trustworthiness, Davis conceded at trial that the first page of the document did feature the signature of the document's custodian. Davis protests that the second page of the document should also have featured, but did not feature, the custodian's signature—but Davis fails to explain why the absence of a signature on the second page of the document indicates a lack of trustworthiness.

Davis offers nothing new to substantiate his objection to the admissibility of Exhibit 49, so the Court denies his motion for a new trial on this ground for the same reasons it denied his objection on the record on the second day of Davis's jury trial. Further, the Court notes that even if Davis were correct in his view that the Court erred, he still could not obtain a new trial on that ground. That is because "[a]n allegedly erroneous evidentiary ruling does not warrant a new trial 'unless the evidence was so prejudicial that a new trial would likely produce a different

8

result.'" *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351 (8th Cir. 2002) (quoting *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 612 (8th Cir. 1997)).

Here, Davis does not meet that standard, because he neither claims nor argues that a new trial excluding Exhibit 49 would produce a different result. Nor could it: at trial, the United States used the document to link the plates on the blue Chevrolet Cruze to Davis's mother. Myeesha Williams testified that she did not have license plates of her own on the vehicle, but that Davis himself attached license plates to the Cruze. By demonstrating, through Exhibit 49, the registration of the Cruze's plates to Davis's mother, the United States corroborated Myeesha Williams's story and linked, albeit indirectly, the vehicle used in the robberies to Davis himself. But even without Exhibit 49, the evidence at trial overwhelmingly identified both the vehicle and Davis as the person driving it to and from the scene of each crime. Video evidence showed the same vehicle approaching and leaving the scene of each crime just before, and just after, each crime. Myeesha Williams, Davis's ex-girlfriend, identified the vehicle shown in those videos as her own. She testified that Davis, who lived with her at the time, had access to that vehicle, and she explained that Davis caused the damage to the vehicle shown in the videos, leading her to kick him out of her home. Likewise, her sister, Laquita Williams, testified that at the time, she lived at the same residence as Myeesha and Davis, and that her sister owned a damaged blue 2012 Chevrolet Cruze. Laquita, too, identified the car shown in the surveillance footage at trial as her sister's.

In short, even if the Court had excluded Exhibit 49, other evidence overwhelmingly tied the vehicle shown in the surveillance footage to Davis. Accordingly, even assuming that the Court erred in the admission of the document—which it did not—the Court also denies Davis's

9

motion for a new trial on this ground for failure to demonstrate that the evidence in question is "so prejudicial," *Harrison*, 312 F.3d at 351 (citation omitted), as to warrant a new trial.

### E.     Admission of Rule 404(b) evidence

Lastly, Davis makes two related arguments:    (1) that the Court erred in admitting Rule 404(b) evidence going to Davis's identity as the perpetrator of the alleged crimes, and in the alternative, (2) that it erred in denying Davis's motion for a mistrial on grounds of ineffective assistance of counsel because counsel opened the door to the admission of Rule 404(b) evidence. Doc. 177 at 4–5.    Again, the Court addressed and refuted both arguments on the record at trial, and does so again here.

Federal Rule of Evidence 404(b) prohibits "[e]vidence of any other crime . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."    Fed. R. Evid. 404(b)(1).    But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."    Fed. R. Evid. 404(b)(2).    As the Eighth Circuit has explained, Rule 404(b) is a rule of inclusion, and such evidence is admissible if "(1) it is relevant to a material issue[,] (2) it is similar in kind and not overly remote in time to the crime charged[,] (3) it is supported by sufficient evidence[,] and (4) its potential prejudice does not substantially outweigh its probative value."    *United States v. Aungie*, 4 F.4th 638, 644 (8th Cir. 2021) (quoting *United States v. LaFontaine*, 847 F.3d 974, 981 (8th Cir. 2017)).

Davis argues that the Court should not have admitted 404(b) evidence of his prior robbery of a Penn Station restaurant because his questioning at trial did not aim to raise questions regarding Davis's identity as the perpetrator of the alleged crimes.    *See* doc. 177 at 4.    Instead, he argues that his questioning aimed only to challenge the credibility of witnesses at trial who

10

identified Davis as the perpetrator of the alleged crimes, and identified his weapon in those crimes as a firearm, based on video recordings of the robberies and attempted robbery. *See id.* But as the Court explained at trial, Davis's distinction between identification and credibility is, in the context of this case, a blurry one. Much of Davis's cross-examination at trial focused on whether witnesses could confidently identify Davis as the man shown in video evidence, including video of a man robbing a Penn Station restaurant.

In the light of such questioning, the Court found that evidence of Davis's prior robbery of a Penn Station restaurant satisfied all four elements of the test for admissibility of Rule 404(b) evidence. The evidence qualified as "relevant to a material issue," *Aungie*, 4 F.4th at 644 (citation omitted), because it went to Davis's identity and plan for the charged robbery of a Penn Station restaurant. The robbery of a Penn Station using a firearm in 2009 qualified as "similar in kind and not overtly remote in time to the crime charged," *id.*, because its facts closely mirror those of the charged 2020 Penn Station robbery, and Davis spent much of the intervening decade incarcerated. The prior robbery qualified as "supported by sufficient evidence," *id.*, because the United States came forward at trial with a certified copy of the conviction. Finally, the potential prejudice of the evidence of the prior robbery did not "substantially outweigh its probative value," *id.*, because defense counsel's questioning of witnesses on the issue of identity increased the probative value of evidence identifying Davis, and to his plan. For those reasons, the Court properly admitted the Rule 404(b) evidence.

Finally, Davis argues in the alternative that because defense counsel's questioning opened the door to admission of the 404(b) evidence, Davis must have received ineffective assistance of counsel. But Davis makes no effort to demonstrate the deficiency in, or prejudice resulting from, defense counsel's conduct. *See* doc. 177 at 4–5; *Strickland v. Washington*, 466

11

U.S. 668 (1984) (outlining the ineffective-assistance-of-counsel standard).  As the Court noted at trial, defense counsel never acted in bad faith or in derogation of his client's instructions.  And Davis fails to show deficiency because he makes no showing that defense counsel's performance at trial "fell below an objective standard of reasonableness."  *Id.* at 688.

As the Court explained at trial, defense counsel's responsibility to avoid opening the door to the proffer agreement and Rule 404(b) evidence made for a very difficult case.  The proffer agreement provided, in relevant part, that if Davis made a proffer statement to the FBI, the United States could use its contents to rebut any contradictory statements made, arguments made, or evidence presented "at any stage of a criminal prosecution."  *See* doc. 149-1 at 2.  Accordingly, after Davis provided a proffer statement admitting to committing the crimes charged, *see* doc. 149-2, defense counsel had few tools left at his disposal at trial:  even the statement that Davis did not commit the crimes charged would have sufficed for the government to move for the admission of Davis's proffer.  Likewise, raising questions challenging Davis's identity as the perpetrator of the charged crimes sufficed to open the door to both the proffer agreement and the Rule 404(b) evidence.

Further, as the Court noted at trial, these difficulties did not arise from trial counsel's conduct, but from Davis's having admitted to the crimes in a proffer, and then instead of pleading, electing to go to trial, as was his right.  By proffering, Davis put himself and his counsel in a tight box at trial, and those circumstances long pre-dated trial counsel's appearance in this case.  Counsel did the best he could with what he had, which wasn't much.

Finally, even if defense counsel's lines of questioning proved unwise, such "strategic choices made after thorough investigation of law and facts relevant to plausible options are

12

virtually unchallengeable." *Strickland*, 466 U.S. at 690. Accordingly, the Court did not err in denying Davis's motion for a mistrial on ineffective-assistance-of-counsel grounds.

## IV. Conclusion

For the reasons described above, the Court denies Davis's [177] Motion for New Trial.

So ordered this 23rd day of August 2024.

　　　　　　　　　　　　　　　　　　SLR.CR
　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　STEPHEN R. CLARK
　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE